Adams, J.
Cause No. 195, Maggie M. Herron v. John O. Herron, is an action that comes into this court on appeal. The petition of Maggie M. Herron is to foreclose a mortgage executed by John W. Herron and wife, (who was Maggie M. Herron, the plaintiff in this action), executed and delivered to the Real Estate and Improvement Company of Baltimore, covering lot 2998 in Moore’s Addition to the city of Newark.
The plaintiff alleges that, on January 25th, 1896, she bought the mortgage of the Real Estate and Improvement Company, and that it was transferred to her; with the usual prayer for foreclosure, the amount claimed being $500. Matilda A. Moore, by her amended answer and cross-petition, sets up her mortgage on this property, being a purchase-money mortgage, dated on the 27th of April 1892, but not filed for record until November 21st, 1895, the mortgage of the Real Estate and Improvement Company having been filed for record on June 8, 1892. Mrs. Moore’s mortgage having been filed for record more than three years later than the mortgage to the Real Estate and Improvement Company, the property having been sold, and not having sold for enough to pay off both the liens, the contest is between these two mortgage lien-holders for the proceeds of the sale of the property. It is claimed on behalf of Mrs. Moore that her mortgage, although later in point of time, is prior in right, First: Because it is said that, in the mortgage to the Real Estate and Improvement Company, it was provided that the Improvement Company had the right to and did exact of John W. Herron that he would maintain insurance in the Relief Department of the Baltimore & Ohio Railroad Company to an amount sufficient to pay off this *162 mortgage; that that insurance was maintained; that out of that insurance the mortgage to the Real Estate and Improvement Company was in fact paid, and, having been paid, it ceased to exist as a lien upon the property in question.
The further claim is made that Mrs. Moore’s mortgage being for a purchase-money mortgage, and Mr. Herron having knowledge of that fact, that her purchase of the Real Estate and Improvement Company mortgage would be subject to the claim of Mrs. Moore by way of a vendor’s lien, or a lien for the purchase-money.
The facts developed on the trial of this case are: On the 27th day of April, 1892, Mrs. Moore and her husband conveyed the property in question to John W. Herron, who was the husband of this plaintiff; that Moore, in this transaction, was acting as the agent of Mrs. Moore, who held the legal title to this property before its conveyance to Herron; that an arrangement was made between Mr. Moore and Mr. Edward Kibler, who was the attorney for the Real Estate and Improvement Company, that Herron was to obtain a loan from the Improvement Company to the amount of $625., to be secured by mortgage on this property, to enable Herron to build a house on the lot, and the arrangement was that this mortgage to the Improvement Company was to be the first lien upon the lot, and the mortgage to Mrs. Moore was to follow that, both in point of time and in point of equity; and that provision is in the mortgage to Mrs. Moore. It is provided:
“This mortgage and the lien thereof is subject and inferior to the lien of a certain mortgage for $625., given by these grantors to the Real Estate and Improvement Company of Baltimore City, to erect a dwelling-house upon said lot, it being expressly agreed that the lien of said company’s mortgage shall be superior to the lien of this mortgage. Reference to the record of said mortgage is made.”
Pursuant to that agreement made between the parties, and some Jirue being necessary to complete the negotiations for the loan from the Improvement Company and the execution of its mortgage, Mr. Kibler retained possession of this mortgage to Moore until after June 9th, 1892, the day when the mortgage to the Real Estate and Improvement *163 Company (which was executed on the 8th of June) was filed for record. That is, the Real Estate and Improvement Company mortgage was executed on the 8th of June, and filed for record on the day following. After the Improvement Company’s mortgage was filed for record, this mortgage was sent through the mail to Mr, Moore, but was not filed by the Moores for record until November 18th, 1895, something like two months after th9 death of John W. Herron.
So far as we have gone in the transaction, it is dear that, from the dates of the filing of these two mortgages, and the arrangement between the parties, Mrs. Moore’s mortgage was to be subordinate, both in time and in equity, to the mortgage of the Improvement Company. This Improvement Company mortgage did contain a provision in regard to insurance, which is in these words:
“It is agreed between the parties hereto that the second party hereto may and shall deduct from the payments made to it under this mortgage an amount of money sufficient to pay the contributions sufficient to secure such an amount of insurance upon the life of the said John W. Herron, under the natural death feature of the Relief Department of the Baltimore & Ohio Railroad Company, as will equal the amount due from him to the said second party at any time, which insurance the said John W. Herron has agreed with the second party to maintain for its security,”
That mortgage was dated on the 8th of June 1892. On • the 17th day of January, 1890, there was issued to John W. Herron — I may not get the terms which are used in this Relief Department matter — 'but there was issued to • him a certificate of membership, in the Relief Department of the Baltimore & Ohio Railroad Company, that provided for certain insurance benefits, and he became a member of Class B. These insurance benefits were payable to himself (that is, to Herron), or, in the event of his death, to his wife, Maggie, who is now the plaintiff in this action. So, on the 17th day of January, 1890, more than two years before the mortgage to the Improvement Company was executed, there had been what is, in effect, an insurance policy issued by the Relief Department of The Baltimore & Ohio Railroad Company on the life of John W. Herron, and made payable to Herron’s wife, Maggie.
*164 On the 8th of June 1892, John W. Herron, and Maggie, his wife, the plaintiff in this action, executed a contract with this Real Estate and Improvement Company. That contract is lengthy, but the substance of it is that this certificate of membership, or insurance policy, whatéver it was called, was assigned by John W. and Maggie Herron, his wife, to the Improvement Company, as an additional security for. the indebtedness that was also secured by their mortgage on this lot, the proceeds of which are now in controversy. Now, if, by the terms of that policy, Mrs. Herron had sold or given away absolutely her right to the insurance, and had provided that that insurance should be taken and applied in full payment and cancellation of that mortgage, then she would have no further right in the insurance, and no further right in the Improvement Company’s mortgage on this property. Although the contract provides that that insurance money shall be.used for the payment of the indebtedness secured by this mortgage, it is further provided that:
“If the whole or any part of the insurance benefits herein assigned shall be applied to the payment of said indebtedness or any part thereof, then the said Maggi.e M. Herron shall, as to the sum so applied, be subrogated to the rights of said Improvement Company in or under any other and additional security it may hold for the payment of said indebtedness, and in particular all its rights under mortgage or deed of trust, made, or hereafter to be made, to secure said indebtedness, and in case of the application of such benefits as aforesaid, the said Improvement Company shall, upon request, transfer to the said Maggie M, Herron all such securities so far as it legally can to secure such rights of subrogation; and the said party of the first part, by its Superintendent, hereby agrees that, in the event of the death of the said John W. Herron before the complete payment of the above mentioned indebtedness, the additional insurance herein provided shall first be applied to paying the same, and that such portion of the benefits herein assigned as are not legitimately absorbed in paying the said debt shall be made over and transferred to whoever may be entitled as beneficiary under the application for membership of the said John W. Herron then in force.”
*165 There was five hundred dollars coming to Mrs. Herron under this certificate of membership after the death of her husband. The Relief Department went through the form and drew two checks, one for four hundred and ninety-five dollars, the amount due on this mortgage, and another one for five dollars. These two checks were both issued to Mrs. Herron, and she endorsed the four hundred and ninety-five dollar check back to the Improvement Company, and the Improvement Company, through its agent, transferred and endorsed its mortgage on this lot to Mrs. Herron.
It is claimed from those facts that that is payment; or, if that claim be not sustained, then it is claimed that, this Improvement Company having two funds — having the security of its mortgage, and the security of this insurance, and Mrs. Moore having only the one fund — the security on the lot in question, that she has a right to compel the Improvement Company to look first to the insurance, and leave the security of the lot for the benefit of her mortgage.
We think the case turns upon who was the real owner of that insurance money. Under the terms of this certificate of membership, when John W. Herron died, Mrs. Herron became the owner of that insurance momy, subject only to whatever she had done with it by her written contract with the Seal Estate and Improvement Company. She had simply assigned her interest in that policy to the Improvement Company as additional security for that debt; and she expressly reserved the right (which the law would have given her anyway) that, if her insurance money was used to pay the debt that her hu3band owed to the Seal Estate and Improvement Company, she should be subrogated to whatever rights and securities the Improvement Company had.
So that, as we view this case, Mrs. Moore, by express contract, and through that arrangement, keeping her mortgage for the purchase-money off of the record until after the Improvement Company mortgage was filed for record, her lien- — -whether it be a vendor’s lien or a lien for purchase-money — was inferior, both in time and in right, to the mortgage of the Improvement Company. That was her contract-, and that is all that she is entitled to either in law or equity, unless the mortgage of the Improvement Com *166 pany has been paid off. Mrs. Herron had a right to buy the mortgage of the Improvement Company; and if she bought it, she acquired the rights of the Improvement Company, Now, as I have indicated, this insurance money was hers. That insurance money was used to pay off an indebtedness of her husband to the Improvement Company. Both by law, and by her express contract, she was subrogated to the rights of the Improvement Company, and she acquired by purchase the mortgage of the Improvement Company.
A A. Stasel, for Plaintiff,
C. W. Steward, for Defendants.
It follows from what I have said fhat there will be a decree in favor of Mrs, Herron, finding that her mortgage is the first and best lien upon the real estate in controversy, and that she is entitled to the proceeds.